The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to draw an eye and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Good morning. Please be seated. Except if you're arguing. We're happy to hear your argument in our first case. Reyes versus Barr. Oyez, do you want to come on up? Good morning. Good morning. And to the Honorable panel, I would just like to thank you and say that I greatly appreciate you having me here to advocate for my client, Mr. Antonio Zambrano Reyes. I'm here today to argue that the Voluntary Departure Order that was entered by the Immigration Court and later reinstated by the Board of Immigration Appeals for Mr. Zambrano is void as ultraviolence because it was beyond the authority of the Immigration Court and the BIA to enter a Voluntary Departure Order where the Department of Homeland Security never actually initiated removal proceedings against Mr. Zambrano. Under the statutory framework, Immigration Courts and the BIA are delegated authority to conduct removal proceedings over non-citizens. But in order for it to exercise that authority, it can only exercise authority over a non-citizen who is actually in removal proceedings. Now, our position that DHS did not initiate removal proceedings against Mr. Zambrano is based in large part on the Supreme Court's decision in Potato v. Sessions, which is cited as 138 Supreme Court Reporter 2105, which is a decision from 2018. Your claim is essentially that there was no subject matter jurisdiction here. Your Honor, the way I describe it is a little bit different than saying subject matter jurisdiction. I think to describe it as subject matter jurisdiction is a little bit confusing because subject matter jurisdiction is generally applied to courts, where in this case an immigration court is part of the executive branch. And it's a little bit better, in my opinion, to consider this as the agency exercising authority when it did not actually have that authority, to acting beyond its authority in a way that was ultra-virus. But either way, you think that is not a waivable problem? Correct. Okay. And why is that? I mean, I know that subject matter jurisdiction is not waivable, but you think even if it's not a question of jurisdiction, this is not a waivable defect? Correct. Okay. which says that where an agency is charged with administering congressional statutes, both the power of the agency to act and the manner in which the agency acts are authoritatively prescribed by Congress. So when they act improperly, no less when they act beyond their jurisdiction, what they do is ultra-virus. So being ultra-virus, the proceedings were void, and so our position is that it's not possible to waive something like that when a proceeding is void, the order is also void, regardless of the fact that Mr. Zambrano actually attended the putative removal proceedings and later received notice, which was provided by the immigration court. I understand. Our position is that this is a departmental... In your brief... I'm sorry? In your brief, you argue in a number of places that the immigration court did not have jurisdiction. So I'm not quite sure, what do you mean by jurisdiction there? If it's not subject matter jurisdiction, did it lack personal jurisdiction? I'm sort of confused by your argument. In this case, the jurisdiction that we're talking about, it doesn't quite fit into this personal jurisdiction versus subject matter jurisdiction. Under City of Arlington, it's something where when the agency acts beyond its prescribed authority, then whatever it does is void. So in this case, the Supreme Court didn't make a distinction between jurisdiction, or in that case, the Supreme Court didn't say that this would be a particular type of jurisdiction, but rather they just said that it's void and ultra-virus. But what's your argument here? That's fine in that case. Yes. But you're saying that the agency acted beyond its jurisdiction. Correct. And was that because it lacked jurisdiction, subject matter jurisdiction, or because it lacked jurisdiction over your client, personal jurisdiction? The agency is only able to exercise any kind of authority and to conduct removal proceedings of somebody who's in removal proceedings. So in this case, the Department of Homeland Security purported to initiate removal proceedings by filing a notice to appear with the immigration court. Well, can I ask you a question? And I understand your argument about the statutory authority. But in looking at the regulation, why can't it be that a separate provision of the statute has nothing to do with notice to appear gives immigration courts jurisdiction, authority to conduct these proceedings, right? And so why can't the agency have a rule that says, look, we're going to docket these cases with the immigration judge for calendaring purposes? At that point, we transfer authority over asylum petitions over to the IJ. We have all these administrative reasons for docketing the authority with one of these charging documents. And then later on, when a hearing becomes somewhat more imminent, we'll give the petitioner notice to appear. What's the problem with organizing it that way? And where in the statute would that be precluded? I do appreciate that there might be practical concerns. But in this case, the reason that the statute precludes this is because the statute, the plain language of the statute requires a notice to appear. Right, right, right. I understand that. So the statute requires a notice to appear. But all the agency is doing is saying before we get to that part, before we actually notify, give the petitioner notice of his hearing, we want to go ahead and docket this thing and get this started. I mean, we don't make district courts not docket a case until they're ready to say when they're going to have the trial. Correct. But under the decision of the Supreme Court in Pareto v. Sessions, including this information about an initial hearing in removal court is part of the definition of a notice to appear under Section 1229, Subsection A. And under the plain language of the INA, in order for removal proceedings to be initiated, there has to be a notice to appear that's under Section 1229, Subsection A. And also under the regulations, the notice to appear is issued by the Department of Homeland Security. And that's under 8 CFR 239.1. So in this case, the procedure where the notice to appear is started, like some incomplete version of a notice to appear, is issued by the Department of Homeland Security, which is later completed or perfected by the immigration court. That doesn't go with the statutory framework nor with the regulation that requires the DHS to issue the notice to appear. Can I ask you a question? There are three different charging documents under the regulation that can initiate or commence this proceeding with the IJ, right? Correct. And only one of them is a notice to appear. There are two other ones. Right. Do you think that if a proceeding is started by virtue of one of those other two documents, that that also the immigration judge is also without authority to decide that case because it was initiated without a notice to appear? Your Honor, I would note that the other documents, which is a referral from the asylum office, or I believe the other one is when they rescind a green card, those are both limited in a way that a notice to appear is not. A notice to appear can be issued to anybody who the Department of Homeland Security believes is removable and charges with removability. So does that mean no, it's okay to initiate a proceeding with one of those other two documents, even though they don't provide time and place for a hearing to the petitioner? Your Honor, I believe that even if there's a referral from the asylum office, that they do actually issue a notice to appear as well. I might be incorrect about that. All I'm saying is the regulation says there's three different documents that will work to initiate a proceeding if you are an immigration judge, and only one of them is a notice to appear. And if your argument is that you can't do anything, you can't even docket a case in front of an immigration judge until a notice to appear that complies with the statute has been served, it just seems to me that those other two documents are not going to do the trick. There's nothing in the regulation that suggests that either of those documents will include a notice to appear, and if they did, it would be sort of weird to break them out as three different documents. Well, Your Honor, I do believe that the other charging documents in this case are outside of the scope of what I'm arguing for Mr. Zimbrano. I would note that part of the government's argument is that the notice to appear that's defined by the statute is somehow a different document than the notice to appear that's defined by the regulations, which says that the information about the initial proceedings should only be provided where practicable. Well, I think there are four or five of the other courts of appeal that have considered this issue, and I think they all disagree with you on that point. I believe that is correct. The second, ninth, and sixth circuits are the ones that I know of that have so far rejected this argument. I assume you would say they are all incorrect. Correct. That is our position, and our argument is those cases following the BIA's decision in Bermuda v. Cota, they based their decisions on the regulation promulgated by the Attorney General, which is 8 CFR 1003.18, and based on my reading of those cases, I don't think that they directly considered whether that regulation is valid or whether, as we argue, that that regulation is void as being inconsistent with the Immigration and Nationality Act. Because the Immigration and Nationality Act, as the Supreme Court made clear in Pereira, specifically defines a notice to appear. So in order... So the Supreme Court in that case never uses the term that you use repeatedly in your briefs, which is jurisdiction. Correct. They never speak in terms of ultra vires or without authority, and it just strikes me as odd. If that was the basis of the Supreme Court's opinion, they would have said something about it. Well, Your Honor, that issue wasn't before the Supreme Court. I have heard it argued that the Supreme Court... That since subject matter jurisdiction can't be waived, the Supreme Court would have had to assess its own subject matter jurisdiction. But in this case, we're not talking about the jurisdiction of the Supreme Court. We're talking about... We're making an argument that the agency went beyond its authority, and I'm running out of time. May I just finish briefly? Yes. The argument is that the agency went beyond its delegated authority, and although the Supreme Court did not specifically consider jurisdiction, I would just note that when an opinion issues for the court, it is not only the result, but also those portions of the opinion necessary to the result, which are binding. That quotation comes from the 1996 Supreme Court, Seminole Tribe v. Florida, which is cited as 517 U.S. 44, and that's at page 67. And then what they actually ruled in Pareto was that the reason that the stop time rule is not triggered is because a notice that does not inform a noncitizen when and where to appear for removal proceedings is not a notice to appear under Section 1229, Subsection A. Thank you. Thank you. Good morning. Good morning. May it please the Court, I'm Virginia Gordon on behalf of the respondent. Your Honor, the jurisdictional question here, and we believe it is a subject matter jurisdiction issue that's been raised. Wait, can I stop you on that? Sure. So the government's position, I just want to make sure I understand. Say the defect in this notice to appear was not that it didn't give the time and place, but instead that it didn't do something that is listed in the regulation. Say there's a typo in the address of the immigration court. The government's position is that that would mean that, you know, 20 years later, that even if the petitioner shows up, goes to the hearing, removal order is issued, 20 years later he's prosecuted for illegal re-entry, we're going to collaterally revoke that removal order because there's a typo, because this is jurisdictional. Well, Your Honor, I guess then I... That's the government's position. Well, in our position, I appreciate that hypothetical. The typo would raise a different issue than what has been addressed here. Well, I understand that, but there's a lot of very picky rules for a notice to appear in this regulation. Very picky. They are very picky and very particular, and I don't want to speculate on what they would say, but because we have been very particular about it being cured by the notice of hearing, it seems fair that there could be an argument that if the notice of hearing similarly made the error, there could be a problem there. We're going to be rigid on following the regulation and saying that the notice of hearing does cure the notice to appear. All right. So you guys say it's subject matter jurisdiction. Any mistake in this regulation is going to deprive the IJ of subject matter jurisdiction over this case. Is there any reason to think that's what was intended? I believe the reason to think that, or we believe the reason to think that that was what was intended is because the statute, where it does under Section 1229, subsection A, say that an NTA needs to have the date and time, the time and location information, it doesn't say anywhere how jurisdiction vests in an immigration court, and so that's where the Attorney General had the authority to promulgate the regulations, which then governed jurisdiction. There's another section of the statute, and I can't remember the number, but there's another section of the statute that gives immigration courts jurisdiction over removal proceedings. It's not 1229, but it's in there. Immigration courts already have jurisdiction. What the statute provides is that they have the authority, so it never uses the word jurisdiction. It uses the word authority over it, and that's the 1229 vote. Well, that's what your colleague is saying, that it's funny to talk about jurisdiction in this administrative law context, but call it jurisdiction, call it authority. They already have it. Right. They do have the authority, but I guess the issue that is what we're seeing come up with this one is that we have two places where it talks about how we have in the statute how you initiate those proceedings, and it defines a notice to appear. It includes the list, which does include that it states the time and place of the removal proceedings, but it doesn't say how does jurisdiction vest in the immigration court, and what the regulations do is title their section 1003.14a as jurisdiction and commencement of removal proceedings, and they provide when it vests with the immigration court, and when it leads to the NTA definition there, the only difference is that this doesn't require the date and time on a notice to appear unless it was practicable for a DHS to provide that information. Where a DHS does not provide that information, the immigration court must then provide it in a notice of hearing, and it must say the date, the time, and the location, and presumably it should be all correct so that a noncitizen is able to attend. And with your earlier question about a typo, if a removal proceeding was held and they were not able to attend, they did not attend their hearing because of that typographical error, they were sent to a different court, we would see that that would not be upheld. No, in my hypothetical they attend. But it turns out that the initial NTA was improper, and so I gather that would mean we would revoke it. So is it your position that the subject matter jurisdiction vests on the filing of the second NTA or the first one? It would be when the noncitizen receives the date, time, and location. So there's no jurisdiction until then, so anything that the immigration judge does until that second one goes out, that was without authority. Well, and there couldn't be, in practical considerations, they couldn't attend a hearing if they didn't know the date, time, and location. So if it were in the NTA, then we wouldn't need that. They would still get the notice of hearing, but the notice of hearing wouldn't be required to curate. It would likely have all the same date, time, and location information unless they were changing the date, time, and location. Let me be sure I understand your response. The notice to appear goes out, and it doesn't say Richmond, Virginia, such and such a date at such and such a time. It says at the city and date and time to be determined later, which I think that's what the regulation provides. So when the first one is filed with the information to come out later, does the immigration court act with jurisdiction slash authority at that point, or is it without jurisdiction until the second notice comes out? It would not be able to act over the non-citizen until the second notice comes out under our reading of regulations because the jurisdiction commences once that notice of hearing provides the date, time, and place information. Where does the regulation say that? I have no idea where you're getting that from the regulation. I thought your whole argument was the regulation is satisfied by an NTA that doesn't comply with the statute because those are two different requirements. Then it can be cured. You have a cure argument. Right. What's the cure? I don't understand where the regulatory violation is in the first place. The issue is, and this was how Bermuda Scotia, I apologize if I wasn't clear, Bermuda Scotia was interpreting the regulations to read it that way. I had no idea what the BIA was talking about either, and the best reading I could give of that decision was that they say that this is what's required to comply with the regulation and the statute, and I get the part where you need the second one to comply with the statute, but on your reading of the regulation, I don't understand your argument that the regulation is not satisfied with the filing of the first NTA that doesn't have the date and time. Okay, so I will clarify. I believe I was thinking more of the statute. So, yes, the regulation does say jurisdiction commences when they receive the charging document, one of those three documents, and as you had mentioned before, two of the documents don't have the list of requirements either. If jurisdiction didn't attach when they sent the first one out that was So then I will clarify. They would have the jurisdiction to docket the case and be able to then file the notice of hearing. So they've got jurisdiction in the sense that they now have the authority that proceedings can commence, but they can't do anything until they file the notice of hearing because you can't have a hearing until that date is set. Well, the regulation says that everything, all the asylum stuff, at the moment that they open this docket with the IJ, all asylum things, asylum issues, I gather this is if the petitioner now raises an asylum claim, normally DHS would have initial jurisdiction authority over those, and now they transfer over to the IJ, right? Yes. In a referral, that sounds like it's an example of a notice of referral. When you're using, where a non-citizen has applied for asylum affirmatively and they apply with DHS before any removal proceedings, they may be referred to an immigration judge for proceedings, and so that notice of referral is one of the charging documents that would commence removal proceedings, and that is under the jurisdiction regulation also. So to clarify, so that would start the jurisdictional aspect for the immigration court once it's transferred over. In another asylum context, a non-citizen may receive a notice to appear before ever applying for asylum and then would be able to apply for asylum in court, but with the regulation on the charging document, the regulation provides that jurisdiction vests when that charging document is filed. To satisfy section 1229 subsection A under the statute, it does require the notice of hearing to follow if that notice to appear did not include the date and time information, the time and place information. So under your theory of the case, once this document, initial document went out, the immigration court was vested with authority. Yes. And does that end this case as far as from your standpoint? As far as the authority to hold proceedings over Mr. Zambrano-Reyes, yes. To meet the requirement for the notice to appear, that notice of hearing was significant and important, and he did receive that, and also his attorney received it. They sent two notices of hearing, so we argue that the court did have authority to enter the voluntary departure order in Mr. Zambrano's case. Based on the fact that we know the statutory section asked for the date and time, however, it was cured by the regulations, the authority under the regulations to provide that date and time and location information in the subsequent notice of hearing. And with the interpretation of the second, sixth, and ninth circuits, they all similarly looked at this comparison of the statute and regulations to find that the attorney general had the authority to promulgate those regulations where the statute was silent on the jurisdiction question. Is the statute silent on the jurisdiction question? It doesn't mention jurisdiction, so it does provide a list of what the notice to appear should provide, but it doesn't provide information on what vests jurisdiction with the immigration court. And so to be able to meet that notice to appear requirement and have the time and place information, the regulations provide that. If it was not practicable for DHS to give that information in the first instance in the notice to appear, the immigration judge has the responsibility to send a notice of hearing with that information. Do you have any other situation where you can tell me that the regulations create jurisdiction and a statute didn't? I just think that's very odd. There is a statutory provision that says an immigration judge shall conduct proceedings for deciding the inadmissibility or deportability of an alien. Why doesn't that give them jurisdiction? That's a statute. I agree, and I believe that the way we're reading is that that does give the authority, but it doesn't explain how does that authority vest. And so that's where the regulation is. If the statute gives them authority slash jurisdiction, why isn't this just a procedural rule that says, here's how you docket a case, and once it's docketed, all the asylum stuff goes over there, not to DHS, so we're just doing some housekeeping. Why isn't this just a procedural housekeeping rule? Why does this have to be about jurisdiction? I don't understand why it's in the government's interest to argue, oh, no, if you mess up any portion of this NTA thing, this whole thing is ultra-virus and the whole thing has to fall. That seems like a very maximalist position for the government to be taking here. Yes, Your Honor. It would seem to open the proverbial Pandora's box to collateral attack for years. Right, I agree. I think to pull it in, the jurisdiction question really came up from once FEDERA was issued, then applicants who had been denied relief took it as a juris. Took the opportunity to say that there couldn't have been jurisdiction because if we read FEDERA to say that a notice to appear that does not have the time and date information, it's not a notice to appear, they're saying they don't have jurisdiction. I get why they want to say that, but we don't understand why you're saying it. Right, well then, really what we would be saying is that that's not the case. The case is that if we're going to talk about jurisdiction, the regulations say jurisdiction, but as a procedural matter, it's a way to say an immigration court receives a charging document. That commences the proceeding. The immigration court now has responsibilities and has responsibilities over this hearing, but to ensure that the non-citizen receives the information that he or she needs under section 1229 subsection A, they will have to file a notice of hearing that has that information because it was not in that case practical for DHS to provide it in the notice to appear, which I think would be the more correct way of framing how we would see this issue. With that then, because in this case Mr. Zambrano received his notice to appear on October 13, 2013 while detained, that information provided that he would have a hearing in Lumpkin, Georgia, it did not say the date and time, and it's possible it was not practicable at that time because between that date and October 29th when he received the notice of hearing for a hearing in Charlotte, North Carolina, he was released from detention. It's possible DHS knew that was coming because they would have been involved in the bond proceedings, but that doesn't come into these cases. Immediately once he gave his Charlotte, North Carolina address, the immigration court issued a notice of hearing with the exact date, time, and location of that hearing. It was a very short time period in which that happened so that the court did have jurisdiction to conduct this hearing. It had jurisdiction. You see you're slipping. Authority. Sorry. It had the authority to then engage in the removal proceedings because he knew the date, time, and location of the proceedings once both documents were filed, served. I apologize. At least some of the other course of appeals seem to have followed the argument that you initially started with today, but I don't know. Have any of them just started from the standpoint that there's a general statutory vesting of authority in immigration judges to conduct certain proceedings and then gone on from there? They have. I'm looking at the Ninth Circuit decision right now, and it looks like that pretty much ates the argument that you made. Right. Started off with today. Yes, and the Sixth Circuit was very similar also. The Sixth Circuit decision went into it, but they did address it as a subject matter issue because the petitioner in that case actually withdrew his jurisdictional argument based on a decision, an unpublished decision, that the Sixth Circuit had made prior to his oral argument, which he believed negated his jurisdictional claim, but the Sixth Circuit looked at it as, well, subject matter jurisdiction can't be waived, and so we have to address this. And the Second Circuit seemed to also discuss it as a matter of a jurisdictional issue. Yes, they talked about the bonding. If the government has all along talked about its jurisdiction, it's no wonder that that's what they did. That's right, and I think that's also the argument. And you're withdrawing that position now, right? I don't know that I can withdraw. I can say that we are responding to the question raised by the petitioner that says that they, well, I guess here the petitioner is saying they were acting altruistic, so in here we're saying they didn't act without authority. They had the authority to conduct these removal proceedings because of the notice to appear and notice of hearing that provided all of the required information. Okay, but when the United States comes before us, I think we're entitled to ask them, what is the basis for the jurisdiction? And you've all along said that it was regulatory. So do you recognize now there's a statutory basis for jurisdiction here? Subject matter jurisdiction or not? I mean, I'm not trying to trick you. I just want to know what your position is. No, I understand. And respectfully, Your Honor, what we'd say is that the statute does not explicitly provide for jurisdiction. It provides for the authority over the removal proceedings, and because it doesn't discuss the jurisdiction, it left that open for the ---- If the government's position is that Congress has not provided IGs with jurisdiction to conduct these hearings, I think we have a big problem because agencies are not allowed to give themselves jurisdiction. So if you are really standing here telling us, no, there's no congressional grant of jurisdiction, wow, we're going to be issuing quite an opinion. Right? Everybody go home. No more removal orders. The government has conceded that there is no statutory jurisdiction. That's how the opinion would start. Respectfully, Your Honor, no. We won't concede that the statute gives no jurisdiction, just that it doesn't explicitly explain how jurisdiction works. So when it gives the authority of the immigration judge, yes, we would argue that there's a jurisdictional aspect to that. But then it doesn't explain, well, how does that jurisdiction ---- I don't think agencies get to do that. I don't think agencies get to explain when their own jurisdiction vests. And it's very weird to have an agency effectively limit its jurisdiction. If I read that statute as Congress saying, go forth IGs, you now have jurisdiction over removal proceedings, why can an agency say, well, not so fast, not unless we file one of these three documents. I just don't understand how this could be jurisdictional. You realize that accepting the statutory jurisdiction argument gets you where you want to go and avoids all kinds of catastrophic problems. Right. And I will say that the statute does provide the jurisdiction, provides the authority for the immigration courts. Just how that authority vests is the question in the regulations. And what the statute does provide here is that an express delegation of authority to the Attorney General to establish the framework to govern immigration court proceedings. So where the statute says immigration courts may have jurisdiction, have the subject matter ability to hear these removal proceedings, they give the AG the authority to determine how those proceedings will take place and how they will be initiated is one of those. So it's a procedural rule. The regulation, in effect, even if they call it jurisdictional, it functions as a procedural rule. Right, Your Honor. I believe that would be accurate because it's giving the procedure of how that jurisdiction, how that Congress' statutory grant of jurisdiction over removal proceedings vests an immigration court. Through the service of a notice to appear, followed by a notice of hearing if the notice to appear does not include the date, time, and place information listed under Section 1229, subsection A. And it's an old-ish regulation, right? In fact, people used to use jurisdiction all the time simply to mean a procedural claims filing rule, and the court has talked about that. Like sometimes things say they're jurisdictional, but they don't mean jurisdiction. They just mean claim filing. Right. And I see my time is ending, so if there are no further questions, if I may wrap up. So thank you for your time. And we agree that the statute provides jurisdiction, the regulation provides how that jurisdiction vests, and that there was jurisdiction over Mr. Zambrano's hearings. Thank you for your time.  Do you have any rebuttals, sir? Thank you, counsel. Thank you to the panel. I do think that it was an excellent point the panel made regarding the apparent statutory authority that's provided to conduct removal proceedings. It specifically says that the immigration courts are tasked with deciding whether the person is inadmissible, removable, with adjudicating applications for relief. But the immigration court doesn't have authority over just anybody who is a non-citizen. If I'm a non-citizen, even if I entered without inspection, and I've never been issued a notice to appear, I don't think there's – I think it's quite clear that the immigration court could not issue an order of removal or a decision saying that I'm removable without me actually being in removal proceedings. And the plain language of the statute is clear that the way that removal is with a notice to appear. Now, we can imagine that the Department of Homeland Security could simply just tell a non-citizen, you're in removal proceedings now, and then they could start getting mail from the immigration court that says you have to show up at such and such a time, and they would probably do it because it has all the apparent trappings of an authoritative command. But for the immigration court to actually have that authority to make these hearings and to conduct these removal proceedings, the Department of Homeland Security first has to file a notice to appear that comports with the Immigration Nationality Act. And now, before Pareto, we probably all would have thought that a document that says notice to appear and has all the information of a notice to appear except for the initial hearing information, it would appear that that was still a notice to appear. But from the Supreme Court, the Supreme Court was very clear in Pareto. They repeatedly referred to a document that doesn't have this information as a putative notice to appear and said that this is not a notice to appear under Section 1229, Subsection A, which is the statute that says how these removal proceedings are initiated. And then regarding the government's position on what the regulation actually does, I think the government is right to some extent that this regulation describes how authority vests with the immigration court. But the government's position was somewhat a moving target in the last 20 minutes. That's correct. But the regulation does describe how jurisdiction vests with the immigration court. But for the Attorney General to promulgate a rule saying how authority vests with the immigration court, it's actually a delegation of authority that the Attorney General is able to say how the jurisdiction vests with the immigration court to the extent that the Attorney General is delegating his own authority. But in order to promulgate rules, those rules are supposed to be gap fillers. They're supposed to elucidate the statute. In this case, as the court in Pareto made clear, the term notice to appear is specifically defined by the statute. So our position is that doesn't leave any room for gap filling or elucidating about what a notice to appear is, which that's the reason that our position regarding the regulation defining a notice to appear in a way that's different than the Immigration and Nationality Act's definition of a notice to appear. That makes the regulation invalid. So... Well, there are lots of times where regulations spell out and add more specificity to what the statute says. And I agree with that. I think that, for instance, if the Attorney General says as an extra requirement on top of what the statute says, you also need to include the A number. That would be part of the Attorney General's proper authority to say that if we want notice to appear to really explain everything the way it needs to, it should include this extra information. But for him to say that, or for the Attorney General as an entity to say that this definition that says there's all these requirements, we're going to take out one of those requirements and say that it's only required where practicable, that would be beyond the Attorney General's authority to promulgate regulations to elucidate a statute. And it's also, I think, worth noting that the Parera decision showed us that, in fact, the Department of Homeland Security has not followed that regulation either. The Department of Homeland Security has not provided an initial hearing date for almost anybody. It's not just that they haven't done it where practicable. They pretty much used it as a loophole to just never provide it. They initially justified saying only where practicable with the thought that there might sometimes be a computer shutdown, something that doesn't work, that would say we can never really do it, it's not that easy, so therefore it's not practicable. And so the notice to appear, which is defined by the Immigration and National Aid Act, it's the same document that served on Mr. Giambrano that was then later filed with the Immigration Court, which is in the record at page 477, which was served on the 13th of October 2013 and filed with the Immigration Court on the 24th of October 2013. And so just to conclude, our position is that it's quite impossible to imagine that same document that's literally the same document could be redefined by regulations promulgated by the Attorney General, which are supposed to elucidate the statute that already specifically defines the minimum requirements for that document. Okay, thank you very much. We will come down and greet the lawyers and then go directly to our next guest. Thank you.
judges: Diana Gribbon Motz, G. Steven Agee, Pamela A. Harris